UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KURT RADEMACHER, AS EXECUTOR
OF THE ESTATES OF MICHAEL MCCONNELL
PERRY AND KIMBERLY WESTERFIELD
PERRY; AND ROBERT ANDREW PERRY, AS
NEXT FRIEND AND GUARDIAN OF S.M.P.,
J.W.P., AND A.R.P., THE MINOR NATURAL
CHILDREN AND WRONGFUL DEATH
BENEFICIARIES OF MICHAEL MCCONNELL
PERRY AND KIMBERLY WESTERFIELD PERRY                      PLAINTIFFS

VS.                             CIVIL ACTION NO. 3:19CV157-TSL-RHW

UNITED STATES OF AMERICA
AND JOHN DOES 1-15                                        DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of Leslie H. Miley, as parent and legal guardian of K.W.P. and W.J.P., and William G. Willard, as Administrator of the Estates of Austin Poole and Angela Poole and also on behalf of the wrongful death beneficiaries of Angela Poole, to intervene pursuant to Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure. Defendant United States of America has responded in opposition to the motion. The court, having considered the memoranda of authorities, together with the court record and attachments submitted by the parties, concludes the motion should be denied.

This case involves an airplane crash that occurred on August 14, 2016, in which all six persons onboard were killed.

1

At the time of the crash, Dr. Michael Perry and Mrs. Kimberly Perry, Dr. Austin Poole and Mrs. Angie Poole, and Drs. Jason and Lea Farese were returning to Oxford, Mississippi from a dental conference in Orlando, Florida, when the plane, a Piper PA-31-324, N447SA, piloted by Jason Farese, crashed just short of the runway at Tuscaloosa County Airport.  Within two weeks of the accident, on August 25, 2016, the National Transportation Safety Board (NTSB), which is charged with investigating accidents involving civil aircraft,[1] issued a preliminary report.  The report recited, *inter alia*:

---

[1] See 42 U.S.C. § 1132; 49 C.F.R. § 831.2(a).  NTSB regulations explain the Board's role:

(a) General. The NTSB conducts investigations, or has them conducted, to determine the facts, conditions, and circumstances relating to an accident.  The NTSB uses these results to determine one or more probable causes of an accident, and to issue safety recommendations to prevent or mitigate the effects of a similar accident. The NTSB is required to report on the facts and circumstances of accidents it investigates.  The NTSB begins an investigation by monitoring the situation and assessing available facts to determine the appropriate investigative response.  Following an initial assessment, the NTSB notifies persons and organizations it anticipates will be affected as to the extent of its expected investigative response.

(b) NTSB products.  An investigation may result in a report or brief of the NTSB's conclusions or other products designed to improve transportation safety.  Other products may include factual records, safety recommendations, and other safety information.

> According to preliminary air traffic control data, the
> pilot reported a failure of a fuel pump and requested
> a diversion to the nearest airport around 1111. The
> controller the [sic] provided radar vectors toward
> runway 30 at TCL. When the airplane was approximately
> 10 miles from TCL, the pilot reported that the
> airplane lost "the other fuel pump." The airplane
> continued to descend until it impacted trees
> approximately 1,650 feet prior to the approach end of
> runway 30.

On April 20, 2018, a year and eight months later, the NTSB released its investigator's factual report relating to the accident,[2] followed by the release on April 27, 2018 of FAA air traffic controller transcripts of the communications between the pilot and air traffic controllers in Atlanta and Birmingham. According to Proposed Intervenors, the transcripts reflected

---

> (c) NTSB investigations are fact-finding proceedings with no
>     adverse parties. The investigative proceedings are not
>     subject to the Administrative Procedure Act (5 U.S.C. §
>     551 et seq.), and are not conducted for the purpose of
>     determining the rights, liabilities, or blame of any
>     person or entity, as they are not adjudicatory
>     proceedings.

49 C.F.R § 831.4.

[2] The report recited that the plane departed Orlando at 8:55 a.m. and at 9:15 a.m. leveled off in cruise flight at 12,000 feet. Then,
> [a]ccording to air traffic control data, … [a]t 1059, the
> pilot reported a failure of the right engine fuel pump and
> requested a diversion to the nearest airport. The
> controller then provided radar vectors toward runway 30 at
> TCL. When the airplane was about 13 miles from TCL, the
> pilot reported that the airplane "lost both fuel pumps" and
> that there was "no power." The airplane continued to
> descend on an extended final approach to runway 30 until it
> impacted trees about 1,650 ft short of the approach end of
> the runway.

3

that FAA air traffic controllers were negligent in various respects. For example, among other things, in response to the pilot's request to be diverted to the nearest airport because the plane's right fuel pump had failed, air traffic controllers misinformed the pilot that the Tuscaloosa airport was twenty miles away when it was actually twenty-nine miles away; Bibb County Airport was only eight miles away. The Board's probable cause report was issued two weeks later, on May 9.[3]

On August 9, 2018, representatives of the Perry estates and the Perrys' wrongful death beneficiaries (Perry plaintiffs), filed a notice of claim with the FAA, accompanied by a detailed report prepared by their retained aviation expert, asserting that negligence on the part of FAA air traffic controllers caused or contributed to the subject accident. On July 24, 2019, following the FAA's February 6, 2019 denial of their administrative claim, the Perry plaintiffs filed an action in this court against the FAA under the Federal Tort Claims Act, 28

---

[3] A factual report is a "report containing the results of the investigator's investigation of the accident." 49 C.F.R. § 835.2. The factual report is separate and distinct from a NTSB accident report, or probable cause report, which is a report issued by the Board which contains "the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format ("briefs" of accidents)." The former is admissible in court; the latter is not. See LeBlanc v. Panther Helicopters, Inc., No. CV 14-01772, 2018 WL 1392897, at *2 (E.D. La. Mar. 20, 2018).

4

U.S.C. § 2671, *et seq.*, seeking damages based on allegations that the air traffic controllers' alleged negligence caused or contributed to the crash.

Nearly two months later, on September 16, 2019, the proposed intervenors, representatives of the estates and wrongful death beneficiaries of Austin Poole and Angie Poole (Proposed Intervenors), submitted a notice of claims to the FAA, advancing virtually identical claims of negligence by the air traffic controllers as were asserted by the Perry plaintiffs. The FAA denied their claim just one day later, on September 17, 2019, on the basis that their claim, having been filed more than two years after the crash, was untimely. On October 7, 2019, Proposed Intervenors moved, pursuant to Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure, for permissive intervention in this action to assert claims against the Government based on alleged negligence of the air traffic controllers.[4] The Government responded, arguing that the motion should be denied because Proposed Intervenors failed to assert a timely claim, i.e., within two years of the date of the crash, when their claim accrued. See Crowley Mar. Corp. v. Panama Canal Comm'n, 849 F.2d 951, 954 (5th Cir. 1988) (affirming order denying

---

[4] See Fed. R. Civ. P. 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.").

5

intervention of claimant whose claim was not timely filed and hence barred by sovereign immunity). For reasons that follow, the court concludes that Proposed Intervenors' claims were not timely presented and that their request to intervene should therefore be denied.

The FTCA grants a limited waiver of sovereign immunity for tort suits brought against the United States or its agencies. See 28 U.S.C. §§ 2674 (providing that plaintiffs may recover against the United States and its agencies under the FTCA "in the same manner and to the same extent as a private individual under like circumstances" under substantive state law). Under the FTCA, tort actions are barred "against the federal government unless the claim is first presented to the appropriate federal agency 'within two years after such claim accrues.'" Johnson v. United States, 460 F.3d 616, 621 (5th Cir. 2006) (quoting United States v. Kubrick, 444 U.S. 111, 113, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)); 28 U.S.C. § 2401(b) (providing that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues…."); 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States … unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by

the agency in writing…."). See also Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp., 764 F.3d 445, 448 (5th Cir. 2014) (citing 29 U.S.C. § 2675(a)) (before a plaintiff may bring a lawsuit under the FTCA, the claim must be presented to the appropriate federal agency and be finally denied by the agency in writing).

While the FTCA does not define when a claim "accrues," "[t]he general rule under the FTCA is that a tort action accrues at the time of a plaintiff's injury." Johnson, 460 F.3d at 621 (citing Kubrick, 444 U.S. at 120, 100 S. Ct. 352). However, "in federal cases where a plaintiff claims [he] was not aware of the injury or could not have discovered facts critical to ascertaining the injury's cause[,]" accrual of the cause of action is governed by the "discovery rule." Dubose v. Kansas City S. Ry. Co., 729 F.2d 1026. 1031 (5th Cir. 1984).[5] "Under the discovery rule, 'a claim accrues when a plaintiff knows both [his] injury and its cause.'" Trinity Marine Prod., Inc. v. United States, 812 F.3d 481, 487–88 (5th Cir. 2016) (quoting In

---

[5] The Government argues that in light of the Supreme Court's recent decision in Rotkiske v. Klemm, No. 18-328 (U.S. Dec. 10, 2019) (rejecting application of discovery rule in cases brought under Fair Debt Collection Practices Act as inconsistent with the statutory text), the discovery rule may no longer be applicable to the FTCA statute of limitations in any context. The court need not address this argument, as it concludes that Proposed Intervenors' claims are barred even under the discovery rule.

7

re FEMA Trailer Formaldehyde Prods. Liab. Litig., 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by* United States v. Kwai Fun Wong, 575 U.S. 402, 135 S. Ct. 1625, 191 L. Ed. 2d 533 (2015)). But as the Fifth Circuit has made clear, this does not mean that a claim does not accrue until a would-be plaintiff is *actually aware* of both his injury and its cause; rather, it accrues when he "has the information necessary to discover 'both his injury and its cause.'" Johnson, 460 F.3d at 621 (quoting Kubrick, 444 U.S. at 120, 100 S. Ct. 352). See also Adrian v. Selbe, 364 F. App'x 934, 937-38 (5th Cir. 2010) (explaining that "[a]ctual knowledge is not necessary … for the limitations period to commence if the circumstances would lead a reasonable person to investigate further….").

Here, Proposed Intervenors were obviously aware of their injury on or very near the date of the crash. The issue is whether they knew, or "in the exercise of reasonable diligence should [have] discover[ed]," that negligence on the part of air traffic controllers was a potential cause of the crash. See Johnson, 460 F.3d at 621 (quoting Millan v. United States, 46 F.3d 377, 381 (5th Cir. 1995)). With respect to the causal-connection element, the Fifth Circuit has held that a plaintiff is considered to have discovered the cause of his injury when he "had knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the

8

injury and [the defendant's actions] or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection." Trinity Marine Prod., 812 F.3d at 488 (quoting Adrian, 364 Fed. Appx. 934 at 938 (per curiam) (alteration omitted)). This is, in short, what reasonable diligence requires. Cf. Osborn v. United States, 918 F.2d 724, 732 (8th Cir. 1990) (observing that "an injured plaintiff cannot claim the benefit of the discovery rule simply by waiting passively for the cause of injury to be revealed.").

The government argues that the nature of a plane crash is such that the event itself is all the information needed to put a plaintiff on notice of the need to investigate all potential causes of the crash. At least two courts have so held. In Hertz v. United States, the court opined that

> [p]lane crashes by their nature typically involve negligence *somewhere* in the causal chain; and the mere fact of the event is thus typically enough to put the plaintiff on inquiry notice of his claim. If the record further reveals that the plaintiff "should have been able to determine in the two-year period whether to file an administrative claim [,]" [McIntyre v. U.S., 367 F.3d 38, 53 (1st Cir. 2004)], then there is no reason to depart from the general rule that accrual occurs upon injury.

560 F.3d 616, 619 (6th Cir. 2009). In the second case, Ressler v. United States, No. 10-CV-03050-REB-BNB, 2012 WL 4328662 (D. Colo. Sept. 20, 2012), the plaintiffs argued that their claim

9

accrued, not when the crash occurred, but some four months later, when the NTSB's first factual report was issued which indicated that air traffic controller negligence may have been a cause of the crash. Citing, *inter alia*, Hertz and Kubrick, the court rejected this argument and found the claim was barred. In the court's opinion herein, while it may not invariably be the case that the date of accrual in an FTCA claim based on a plane crash will be the date of the crash, that typically it the case; and, it is the case here.

Proposed Intervenors assert that their claim accrued when the air traffic control transcripts were released in April 2018 and not before, as until they reviewed those transcripts, they neither knew, had reason to know nor could reasonably have known that negligence by the air traffic controllers may have caused or contributed to the subject crash. According to Proposed Intervenors, they did not fail to exercise the requisite diligence in discovering their claim but rather acted diligently by retaining counsel shortly after the accident and conducting what they characterize as a "reasonable investigation"; yet they offer no specifics as to what that investigation entailed. In fact, it appears from their arguments that they made little to no investigation. In this regard, they suggest that they were relegated to reviewing the NTSB's preliminary report, as that was "the only source of readily available facts following the

event." And they contend that based on the information contained in that report, they had no reason to suspect any negligence by air traffic controllers. In fact, they say, the report misleadingly implied that the air traffic controllers acted appropriately by providing the pilot with vectors to the nearest airport. Thus, they argue, they had no reason to seek out additional information, such as the transcripts of the communications between the pilot and air traffic controllers via a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or to search for other potential tortfeasors.

In the court's opinion, however, Proposed Intervenors' purported reliance on the NTSB's preliminary report as a basis to forego further investigation was unwarranted and demonstrates a lack of reasonable diligence, particularly as the report did not purport to be comprehensive or accurate. On the contrary, the report specifically cautioned that the information contained therein was "preliminary information, subject to change, and may contain errors." Moreover, and contrary to Proposed Intervenors' urging, the report cannot reasonably be read as implying anything regarding the actions of air traffic controllers. The report merely recited that "[a]ccording to *preliminary* air traffic control data, the pilot reported a failure of a fuel pump and requested a diversion to the nearest airport around 1111 [and] [t]he controller the [sic] provided

radar vectors toward runway 30 at TCL.  (Emphasis added)."
There is no implication that the information provided by or
instruction given by air traffic controllers was accurate or
proper.[6]

In sum, as it is apparent to the court that Proposed
Intervenors, in the exercise of reasonable diligence, could and
should have discovered that negligence on the part of air
traffic controllers was a potential cause of the crash, their
motion to intervene will be denied.[7]

---

[6]   Proposed Intervenors have argued that even if the court concludes that their cause of action accrued at the time of the crash, the court nevertheless should find their claims timely based on the doctrine of equitable tolling.  However, equitable tolling is inapplicable, both because the Government did nothing to mislead them and because Proposed Intervenors, by their own admission, became aware of air traffic controllers' alleged negligence when the NTSB released the transcripts in April 2018 (i.e., before the limitations period ran) and yet they waited nearly a year and a half to file their claim.  See Trinity Marine Prod., 812 F.3d at 489 (5th Cir. 2016) (stating "[t]his Court has recognized several grounds for equitable tolling, including where a plaintiff is unaware 'of the facts giving rise to the claim because of the defendant's intentional concealment of them'" and recognizing that "equitable tolling not intended for those who sleep on their rights") (quoting Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011)).

[7]   It is obvious from the fact that the Perry plaintiffs were able to obtain both legal counsel and an expert and timely file their claim that plaintiffs could have discovered these claims; and in the court's opinion, so, too, should they have done so.

Accordingly, it is ordered that Proposed Intervenors' motion to intervene is denied.

SO ORDERED this 19th of March, 2020.

/s/Tom S. Lee_____
UNITED STATES DISTRICT JUDGE